**Pages 1 - 39**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable Andrew G. Schopler, Judge

RODNEY VALIDO MESA,                )
                                   )
          Petitioner,              )
                                   )
   VS.                             )      NO. 26-CV-00489-AGS-KSC
                                   )
CHRISTOPHER J. LAROSE, et al.,     )
                                   )
          Respondents.             )
_____  )

San Diego, California
Tuesday, March 3, 2026

**TRANSCRIPT OF WRIT HEARING**

**APPEARANCES**:

For Petitioner:

> IMMIGRANT DEFENDERS LAW CENTER
> 634 South Spring Street, Tenth Floor
> Los Angeles, California 90014
> **BY:  JANICE M. DEATON, ESQ.**

For Respondents:

> ADAM GORDON
> United States Attorney
> 880 Front Street, Room 6293
> San Diego, California 92101
> **BY:  JULIET KEENE, ESQ.**
> **ASSISTANT UNITED STATES ATTORNEY**

Reported By:      James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                  Official Court Reporter

**Tuesday - March 3, 2026**                                          **3:30 p.m.**

                          P R O C E E D I N G S

                              ---oOo---

          THE CLERK:  All rise.

     This United States District Court for the Southern

District of California is now in session, the Honorable

Andrew G. Schopler presiding.

          THE COURT:  Good afternoon, everyone.

          ALL:  Good afternoon, Your Honor.

          THE CLERK:  Please be seated and come to order.

     Counsel, when I state your case, please state your

presence for the -- for the record.

     As to Matter Number 2, 26-CV-489, Valido Mesa v. LaRose,

et al.

          MS. DEATON:  Good afternoon --

          THE CLERK:  Counsel, please state your appearance.

          MS. DEATON:  Good afternoon, Your Honor.

Janice Deaton on behalf of Mr. Valido Mesa.  He is not present.

          THE COURT:  Good afternoon, Ms. Deaton.

          MS. KEENE:  And Juliet Keene on behalf of the

respondents.

          THE COURT:  Good afternoon, Ms. Keene.

               (Discussion regarding other cases.)

          THE COURT:  Okay.  I appreciate everyone being here

for the hearing on the pending habeas corpus petitions before

the Court, which are all filed at ECF 1 in the relevant dockets.

The reason that I called all six of these cases together is that they all appear to have the same legal issues -- or turn on the same legal issues.  So I thought I would give my legal reasoning for a tentative ruling at one time.

And then, to the extent there are different facts that the Court has overlooked in a particular case, I'm happy to have the parties let me know about that.  But it seems to me that all of these cases would rise and fall based on the same legal analysis.

So what I'll do is I'll give the parties my detailed tentative ruling based on my review of the papers.  Then I'll hear oral argument from all sides before I make a final ruling.  I'm certainly willing to be convinced otherwise or be convinced to modify or reverse my tentative ruling after I've heard oral argument.

In one of the cases, 26-CV-489, which is Valido Mesa versus LaRose, there is also an outstanding order to show cause.  I'll address that after I've dealt with the merits of all the -- hearing all the other cases.  We can deal with that last after every- -- everyone else's cases are done.

So, first of all, the Government raises a jurisdictional bar to the Court hearing these habeas petitions.  I would simply incorporate my analysis from a couple of other cases

I've decided raising these same jurisdictional issues and respectfully reject the Government's arguments, citing to *Soryadvongsa v. Noem*, 2025 Westlaw 3126821, Page 1, Southern District of California, 2025; and *Torres Velazquez v. Noem*, which is in our docket at 25-CV-3436, Southern District of California, 2025.

Turning to the merits, each of these petitioners, in order to succeed in their habeas petitions, must shoulder the burden of showing that they're in custody in violation of the Constitution or laws of the United States under 28 U.S.C. Section 2241.  The statutory scheme here, I think, is -- is relevant.

The detention of each petitioner appears to be lawful from a statutory standpoint; that is, each of them was caught at the border, and thus each of them is subject to mandatory detention under 8 U.S.C. Section 1225, Subsection (b)(1), Capital (B), Little Roman Numeral (ii).

And that mandatory detention would apply, notwithstanding a favorable credible-fear finding or a successful-but-appealed withholding of removal or an asylum petition.  The statute mandates detention in all those circumstances.  So I think that leaves us with the constitutional arguments.

Each of the petitioners have urged the Court to release them from custody on the grounds that their prolonged detention violates the Constitution, specifically the Due Process Clause.

The petitioners here have been held in custody for somewhere between 8 and roughly 13 months, depending on the case, which I find deeply troubling.

These petitioners have been held longer, in some cases, than people charged and convicted of felony offenses, despite the fact that some of them have been law-abiding, as far as the record demonstrates, and have done nothing to suggest that they're either a danger to the community or a flight risk.

The Court starts from the perspective that liberty is the norm in the United States of America, particularly in the context of civil detentions, which is the context we're in right here. These are not criminal detentions or criminal custody. This is a detention for civil proceedings. So liberty is very much strongly the norm, and the constraints on the Government, in terms of restricting people's liberty in the civil context, are at their zenith.

I have read through all the parties' submissions, and I have scoured the case law in this area, both in the Ninth Circuit and throughout the nation. Over the last number of weeks, while I've been pondering this issue, I've read dozens of cases from decades ago to a few days ago.

It -- it gives me no joy to report that, after all of that reading and research, my tentative ruling is that each of these petitions for a writ of habeas corpus should be denied based on, particularly, Supreme Court guidance on the -- the legal

issues here.  The due process arguments that have been raised, I think, are difficult to square with the relevant Supreme Court case law.

Once upon a time, the Ninth Circuit held that individuals who are in prolonged civil detention -- civil immigration detention specifically longer than six months, under 8 U.S.C. Section 1225(b)'s mandatory detention scheme, should receive a bond hearing process to avoid constitutional concerns.

And that was the case of *Rodriguez v. Robbins*, 715 F.3d 1127, Ninth Circuit -- 2013 was the year -- specifically Page 744 of that opinion.  But that case, *Rodriguez*, was overruled by the Supreme Court in a case called *Jennings v. Rodriguez*, 583 U.S. 281, 2- -- 2018 Supreme Court case, Pages 300 and 301.

The Supreme Court, in *Jennings*, left open some daylight, I think, for a due process claim, however, writing, quote, "Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits," end quote.  That's from Page 312.

Arguably, this leaves open the door for a due process claim in the correct case, but the Supreme Court seemed to mostly shut that door in another case it considered called *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103,

2020 Supreme Court case.

In *Thuraissigiam*, the Supreme Court held that, quote, "An alien in respondent's position" -- that is, someone stopped at the border, like each of the petitioners here -- quote, "has only those rights regarding admission that Congress has provided by statute," end quote.  That's Page 140.

If due process, in this context, ends with the words of the statute, then it seems to me that -- that the statutory analysis I mentioned earlier for the detention here would also cover the due process analysis.  In other words, if it's allowed by the statute, then it would be permitted under due process.

Since the detention appears to be lawful from a stop -- statutory standpoint, under 8 U.S.C. Section 1225(b), because the petitioners were caught at the border and are subject to that statute's mandatory detention, the -- the detention would be lawful and constitutional.

*Thuraissigiam* is not alone in that determination.  The Supreme Court held in another case, *Shaughnessy v. United States ex. rel. Mezei*, 345 U.S. 206, 1953 Supreme Court case, that prolonged, potentially indefinite custody or incarceration of a foreigner who was stopped at the border was constitutional because he had no due process protections other than what Congress had permitted.

That case has been heavily criticized by lower courts, but

the Supreme Court has never overruled it.  And, in fact, the Supreme Court seemed to reinvigorate *Shaughnessy v. United States ex. rel. Mezei* by specifically relying on it and discussing it in the case of *Zadvydas v. Davis* in 2001. *Zadvydas v. Davis* -- the citation is 533 U.S. 678.

In *Zadvydas*, the Supreme Court embraced the distinction between someone stopped at the border and someone who has attained what's come to be known as territorial standing as a critical -- quote/unquote, "critical" distinction in the detention context that it relied on in that case.

And this distinction between people who are arrested at the border or shortly after crossing into the United States fall under the rubric of what's been called the entry fiction. Those who have made it into the United States and have been living here for some time have -- fall under a different analysis where they have territorial standing.  That is a throughline that runs through a lot of the Supreme Court cases that I've read.

In *Zadvydas*, the Supreme Court acknowledged that *Mezei*, like the present cases, involved indefinite detention.  But Mezei was "treated, for constitutional purpose-" -- "purposes, as if stopped at the border, and that made all the difference." This is from Page 693 of *Zadvydas*.

The Supreme Court went on to double down on that analysis, holding that, quote, "It is well-established that certain

constitutional protections" -- and in that case specifically, the Due Process Clause -- "that are available to persons inside the United States are unavailable to aliens outside of our geographic borders."  Ultimately, however, *Zadvydas* is not a constitutional case.  And so while I think its discussion of the *Mezei* case is relevant, it is arguably dicta.

I recognize that most District Courts have, perhaps understandably, rejected the position that border detainees lack any due process rights to challenge their custody beyond whatever Congress may have afforded them by statute.  I've read through many of those cases.

One I would cite to is *Sadeqi v. LaRose*, 2025 Westlaw 3154520, at Page 2, Southern District of California, 2025, in which one of my colleagues wrote that it is, in fact, the majority position that a petitioner detained, under Section 1225(b)(1), may assert a due process challenge to prolonged mandatory detention without a bond hearing.

The courts that have taken that view have relied -- many of them have relied heavily on dicta from the Ninth Circuit in the case that the Supreme Court remanded in *Jennings*.  The Ninth Circuit case that -- that accepted that remand is *Rodriguez v. Marin*, 909 F.3d 252, Ninth Circuit, 2018.

And in that case, the Ninth Circuit wrote, "We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those

who founded our democracy precisely to protect against the Government's arbitrary deprive" -- "deprivation of liberty would have thought so.  Arbitrary civil detention is not a feature of our American government.  Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  This is from Page 256 of *Rodriguez v. Marin*.

The courts that have relied on that dicta often note that *Thuraissigiam* itself was about a noncitizen's right to challenge admission, not detention.  And I'd cite to *Sufiiarov v. Warden*, 2026 Westlaw 26079, Page 4, Southern District of California, 2026.

I think that's a fair point, but I -- I also believe that few courts have effectively wrestled with the Supreme Court cases I mentioned, particularly *Mezei* and *Zadvydas*, and their treatment of these same concepts in the detention arena -- arena.

The courts that have attempted to -- to grapple with *Mezei*, for example, have found it distinguishable based on national security reasons which happen to be involved in that case, but I'm not convinced that that is a meaningful distinction in *Mezei*.

I think the reference to national security concerns in *Mezei* could be taken out of that opinion entirely, and the reasoning that remains would fully support the Court's

conclusion that the petitioner there, Mezei, could be held potentially permanently on Ellis Island.

The holding of *Mezei* is that due process -- the Due Process Clause simply does not apply to border detention beyond what Congress has allowed by statute, and I'm not sure how the executive's unilateral declaration of national security issues would change that application of the Constitution.

In fact, if this Court were to read *Mezei* as saying that any time the Executive Branch decrees that petitioners are a national security concern without judicial review, without providing evidence, without providing any reasoning, if this Court were to find that that sort of Executive Branch decree were enough to deny due process rights to petitioners, that that is somehow a magic wand -- wand to allow their permanent, indefinite detention, I think that would be a much greater constitutional concern than my reading of *Mezei*, which is limited to its due process application to border entrants.

The ultimate result is that District Courts that have found that *Mezei* does not apply here and that a due process challenge for prolonged detention is available in these Section 1225 cases have essentially put back into place the prolonged detention concept that the Supreme Court specifically reversed the Ninth Circuit for reading into these cases.

I find the logic of both the District Courts that have -- have -- have found a due process right here as well as the

dissent in *Mezei* to be compelling in many ways, but ultimately I think they run headlong into the majority opinion in *Mezei* as well as the Supreme Court's later statements in *Thuraissigiam* and *Zadvydas*, and I'm not persuaded that those District Courts have got the right legal analysis as a result of -- of these Supreme Court cases.

In addition to all of that, based on my review of the cases, I would add a couple other points to my analysis.  First of all, I think the Supreme Court has embraced repeatedly this constitutional distinction between territorial standing and petitioners who are subject to the so-called entry fiction. That is, the Supreme Court distinguishes between individuals coming from abroad who have effected an entry into the United States and those, like the petitioners here, who were stopped at the border.

As I mentioned before, there's a throughline, I think, from the cases that precede *Mezei* all the way through the *Mezei* case and all the way up to *Zadvydas*, on that very point.  And as I mentioned, *Zadvydas* found that distinction to be critical in assessing claims of indefinite detention, particularly the Supreme Court reaffirming that distinction in *Mezei*'s due process analysis in *Thuraissigiam*.

For those who qualify as aliens who are stopped at the border, therefore, I think the decisions of executive or administrative officers acting within powers expressly

conferred by Congress are due process of law, according to the Supreme Court in *Thuraissigiam*.

The Supreme Court has also stated and reaffirmed its longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings, and the Supreme Court stated that in its decision in *Demore*, 538 U.S., at 526, as well as *Zadvydas* and *Jennings*.

And the conclusion, in both Supreme Court case law and elsewhere, that aliens detained under Section 1225(b), like the petitioners here, face a definite termination point means that their detentions are not indefinite or intentionally permanent and places the constitutional analysis on different footing when there's a definite endpoint to the proceedings.

So I think -- I would find, at least tentatively, that someone who qualifies as an alien who is subject to the entry fiction's procedural rights, under the relevant statutes, is only entitled to whatever procedural due process rights Congress has provided.

The final point I would make is I do think that there is a -- an avenue for petitioners, like the ones in these cases, to nevertheless obtain release or relief from a federal judge in the right circumstances.  Specifically, I think, theoretically, petitioners may have substantive due process rights which would extend beyond the procedural protections

that Congress provides by statute.

I just don't find that the facts before me, in any of these cases, would implicate those sort of substantive due process rights.  And I'll -- I'll explain my -- my thinking on that a little bit.

First of all, when I'm talking about substantive due process rights, if the United States were to decide to refuse to feed these petitioners or to shoot people it held in custody for immigration detention or it -- commit acts of that nature, that would, in my mind, certainly violate substantive due process.  And there is a line of cases that deal with things of that nature that shock the conscience that I think would separate a case like that from -- from the cases I've been talking about regarding procedural due process.

And in the line of substantive due process cases, the Supreme Court has -- has ruled on, ultimately, the Government may not violate a noncitizen's substantive due process rights, even if they're subject to the entry fiction, if their immigration detention becomes, in some way, quote/unquote, "punitive."

The mere fact that the person is detained, however, does not necessarily mean that the Government has imposed punishment or engaged in punitive behavior.  The Supreme Court has said that a restriction on liberty becomes punitive rather than regulatory in nature if the Government intends to impose

punishment or those -- the restriction is not rationally related to a legitimate, nonpunitive government purpose or if it's excessive in relationship to that purpose.

There are a number of cases for that point, but I'd cite to *United States v. Salerno*, 41 U.S., at Page 747, as well as *Kingsley v. Hendrickson*, 576 U.S. 389, at Page 398, 2015 Supreme Court case.

Also, Justice Kennedy, in his concurring opinion in *Demore v. Kim*, stated that an unreasonable delay by immigration officials, in pursuing and completing deportation proceedings, might make it necessary to inquire whether the detention is not to facilitate deportation but, rather, to incarcerate for other reasons that could implicate constitutional concerns.  That's at 538 U.S., Pages 532 and 533.

Similarly, the Supreme Court laid out concerns of that nature in *Wong Wing v. United States*, 163 U.S. 228, Pages 237 and 238, which is an 1896 Supreme Court case, which found that civil detention of a removable noncitizen violates the Constitution if it's punitive.

Again, there's no evidence before me in these habeas petitions, however, that the Government intends to impose punishment or intends for the detentions here to be punitive. And I would tentatively find that the restrictions here appear to be rational, nonpunitive -- have a rational, nonpunitive purpose for detention based on the facts in the record.

That is, these detentions would be rationally related to a legitimate, nonpunitive government purpose and not excessive in relationship to that purse -- purpose, given the Supreme Court's guidance in a number of cases.  But certainly, in *Mezei*, the petitioner had been held in custody for over three years, and the Supreme Court found no constitutional error there.

Nonetheless, I think, in the appropriate case, there may be facts that suggest the Government's purpose is punitive or that the detention itself has become, in some manner, punitive either by unreasonable delay in completing immigration proceedings or deportation proceedings.

Ultimately, my tentative ruling is to deny each of these habeas petitions without prejudice.  Certainly, each petitioner could, in theory, refile habeas petitions if they have evidence of a due process violation because the circumstances of their detention has become either indefinite -- that is, there's no definite endpoint -- or that there's evidence they are being held for some nonimmigration purpose that would violate substantive due process rather than procedural due process.

That, again, is my tentative ruling in each of these cases, but I'm happy to be convinced otherwise.  Let's hear first from -- from petitioners, and then I'll -- I'll hear from the Government.

And why don't we start with Ms. Deaton.

**MS. DEATON:** Thank you, Your Honor.

Would the Court prefer that I stand at the podium, or is it all right for me to stay here?

**THE COURT:** Where- -- wherever you're most comfortable.

**MS. DEATON:** Thank you --

**THE COURT:** Yes.

**MS. DEATON:** -- only because I'll be using my computer. So I'll stay here.

Thank you.

**THE COURT:** Okay.

**MS. DEATON:** Thank you, Your Honor. Thank you for that very thorough tentative ruling. That was really helpful.

I -- I have a couple of preliminary matters. Mr. Valido is in a very different procedural posture now than, it sounds like, any of the other petitioners before the Court today, and I'm going to explain what that is.

But -- so the three preliminary matters that I wanted to bring to the Court's attention is that in -- as the Court knows, there is a matter that the Court's going to consider at the end of calendar.

I personally have had other cases where the District Courts have ruled in a petitioner's favor where there was a failure to respond by opposing counsel, and I just want to request that again, that the Court do rule in our favor because

of the failure to respond.

The second --

**THE COURT:**  And so I -- we can -- I'm not going to come to a final ruling in your case until we've dealt with all of the -- the issues, and so that's one of the -- one of the matters we can address.

But it does seem to me, regardless of the Government's failure to respond, it's still the petitioner's burden to establish the constitutional violation.  And so how do we -- how do we get there?

**MS. DEATON:**  Sure.  Thank you.

So in our supplemental briefing that we filed, I think, this morning, prior to the Government's return -- filing of their return, the BIA did issue and dismiss the appeal, affirming Mr. Valido's -- and this is critical, Your Honor -- affirming his relief.

Mr. Valido has received relief from the court.  He cannot be removed to Cuba.  He has received relief from the court, withholding of removal.  That was affirmed by the BIA, and so Mr. Valido -- the proceedings are over, and, therefore, 8 U.S.C. Section 12- -- 1225 does not apply to Mr. Valido. There are no statutes that apply.  *Jennings* doesn't apply. None of it applies.

And, in fact, in *Jennings* -- I have a quote right here that -- the court specifically said, "The plain meaning" -- and

this is at Page 16, Your Honor. "The plain meaning of those phrases is that detention must continue until immigration officers have finished considering the application for asylum or until removal proceedings have concluded." Both of those things have concluded, Your Honor, again, with Mr. Valido receiving relief --

THE COURT: Uh-huh.

MS. DEATON: -- and his removal proceedings have concluded. The BIA did dismiss the appeal.

For those reasons, Your Honor, I can move into the substantive due process. He is no longer being held for any valid immigration purpose. Any detention is therefore --

THE COURT: Well, it seems like your argument would be procedural due process at this point if he's --

MS. DEATON: Well, under *Mathews* --

THE COURT: Yeah.

MS. DEATON: -- the three factors -- those three factors --

THE COURT: Uh-huh.

MS. DEATON: -- also fall very heavily --

THE COURT: Hmm.

MS. DEATON: -- in favor of Mr. Valido's -- but also with the substantive due process --

THE COURT: Uh-huh.

MS. DEATON: -- the punitive versus --

THE COURT: Uh-huh.

MS. DEATON: -- being detained for a --

THE COURT: For a regulatory purpose. Uh-huh.

MS. DEATON: Yes, for -- for immigration purposes. There are no more immigration purposes.

THE COURT: Hmm.

MS. DEATON: I think that that's very distinguishable, Your Honor, and I think that that situation -- the fact that the BIA appeal is --

THE COURT: Uh-huh.

MS. DEATON: -- concluded with relief for Mr. Valido -- I believe that that puts him in a very different position and that the petition should be granted for those reasons.

THE COURT: All right. Thank you, Ms. Deaton.

Why don't we cycle through all of the petitioners first and give the Government an opportunity to respond.

MS. DEATON: Sure.

(Discussion regarding other cases.)

THE COURT: Let's hear from the Government.

I think maybe Ms. Keene gets to go first, but I'll let the United States Attorney's Office decide who's supposed to go first here.

MS. KEENE: Judge, I'll start with the Valido Mesa --

THE CLERK: Counsel -- Counsel, can you please stand.

MS. KEENE:  Yes.

THE CLERK:  Thank you.

MS. KEENE:  I will start with the Valido Mesa matter. Just to be clear, the BIA did not grant relief in this case.  The Immigration Judge denied petitioner's asylum application, and the BIA affirmed that decision.  And on Friday the 27th, petitioner filed a petition for review.  That is now, you know, preventing any further removal.

That petition is now subject to a final order of removal under Section 241, and that's procedurally where that case is, Your Honor.

THE COURT:  Okay.  All right.  Anything further on the Valido Mesa case?

MS. KEENE:  Nothing further on the briefing, Judge. Thank you.

(Discussion regarding other cases.)

THE COURT:  Okay.  Anyone wish to be heard in rebuttal?

MS. DEATON:  Very briefly, Your Honor.  Again, Janice Deaton for Mr. Valido.

I just wanted to point out that Mr. Valido's immigration proceedings are completely completed.  They are -- they're done.  He -- his petition for review was in front of the Ninth Circuit.

We are no longer in the Executive Branch.  We're no longer

with Immigration Judges or the BIA.  We are now with Article III judges, such as Your Honor, and -- and so he is not in immigration proceedings.  There is no legitimate purpose whatsoever to keep him in custody as a -- as a civil immigrant defendant -- or a civil immigrant petitioner.

**THE COURT:**  Okay.

**MS. DEATON:**  Regard- -- I'm sorry.  And -- one last point.

Regardless of whether there's some possibility of him being removed to a third country, I don't see that possibility right now.  Again, he was granted withholding of removal.  The only reason he was not granted asylum, Your Honor, is because of the Circumvention of Lawful Pathways rule that was imposed by the Biden Administration.

There is a case that we cited in our brief that is up on -- in front of the Ninth Circuit.  It's very likely that -- that CLP will be ruled unconstitutional -- or in violation of the INA and the Constitution.  And if that happens, then we would move to reopen, but we would hope that Mr. Valido would be out of custody.

Finally, just super briefly -- and I apologize for being so wordy.  The briefs, Your Honor, in the Ninth Circuit are not due until -- briefing will not be completed until after June of 2026.  Specifically, June 17th is when the answering brief is due.  Any reply brief would be due after that.

And I know that you're very aware of how long the Ninth Circuit takes for a decision.  So we're talking about possible detention --

**THE COURT:**  Hmm.

**MS. DEATON:**  -- until -- well, indefinite.

**THE COURT:**  Uh-huh.

All right.  Thank you, Ms. Deaton.

(Discussion regarding other cases.)

**THE COURT:**  All right.  All right.  I am going to take a brief recess to consider the parties' arguments, and then I'll be back out to give the parties my final ruling.

It's 4:36 p.m. right now.  I certainly want to get people on the road before it gets too late.  Does anyone have childcare issues that I should be aware of or anything like that or time limitations that -- I'm not trying to have anybody's kids stranded.

Ms. Keene, yes.

**MS. KEENE:**  I --

**THE COURT:**  What's the -- the deadline?

**MS. KEENE:**  5:30 would be my hard stop, Judge.

**THE COURT:**  Okay.  I'll -- I'll keep that in mind.

Thank you.  That's about my own time limit.  So I think we'll be all right.

All right.  I'll be back out as soon as I can.

(Recess taken at 4:37 p.m.)

(Proceedings resumed at 4:52 p.m.)

THE CLERK:  Remain seated and come to order.  We are once again on the record.

THE COURT:  All right.  I appreciate everyone's patience while I was considering the arguments of the parties.

I am going to reserve on the Valido Mesa matter because there's --

(Discussion regarding other cases.)

THE COURT:  All right.  I am going to reserve on the Valido Mesa matter because there are some additional arguments that don't apply to the other cases.

(Discussion regarding another case.)

THE COURT:  For the remaining petitioners -- Gharti Magar, Chehrazi, Moradi, and The Ma -- I would just add the additional comments -- I mean, this applies to all -- all of the cases, but I -- I don't think that the distinction that was raised in -- regarding the Convention Against Torture, in Petitioner The Ma's case and the Valido Mesa matter, makes a difference to the Court's legal analysis.

The basic argument is that we'd moved from detention under Section 1225 to Section 1231.  First of all, it's not -- I don't think that's accurate because Section 1231 only applies once the case is administratively final, and it specifically exempts the situation where it's still under judicial review or -- or an order has been stayed.

For example, in the Valido Mesa case, I think both of those exceptions apply.  Its on review by the Ninth Circuit, and they automatically stay all of these cases until they are able to review the motion to stay.  It -- it may soon not be stayed once the Ninth Circuit takes a look at the motion -- I don't know -- but I think Section 1231 would not apply.

Even if I'm wrong about that, and Section 1231 does apply, I -- I don't think that it gets any better for the petitioners because -- under Section 1231, when there's a period of 90 days that only starts counting once Section 1231 is implicated where the petitioner must be detained.

And so I think you'd at least have to get beyond that 90-day period, under Section 1231 detention, before there would even be the possibility for constitutional due process argument for release.  So I don't think that those arguments make a difference to the Court's analysis.

(Discussion regarding other cases.)

THE COURT:  And then I think that only leaves the Valido Mesa case, but before we turn to the arguments that are specific to Valido -- or unique to Valido Mesa, does anyone need clarification about the -- the Court's ruling in any of the cases that I've -- I've mentioned other than Valido Mesa?

(Discussion regarding other cases.)

THE COURT:  And in all of the other cases, other than Valido Mesa, the Court would confirm its tentative ruling

denying the petitions for habeas corpus.

But the Court would strongly encourage the Government to expedite these proceedings as quickly as possible, given the length of time that these petitioners have been sitting in detention. Again, some of them have not committed any crimes, as far as I can tell, their entire lives. And at worst, they have committed a petty offense of entering the country without authorization.

And so I think the Government has a -- a duty to move as expeditiously as possible to resolve their immigration claims and get them out of detention at the soonest possible point.

But that would be the Court's ruling in those matters, and everyone, other than the attorneys in the Valido Mesa matter, are welcome to head home.

Thank you.

(Discussion regarding other cases.)

**THE COURT:** Turning to Valido Mesa, I did want to make -- put one thing on the record.

I was informed by my staff that some representative of the U.S. Attorney's Office had dropped off a package -- or a packet that, it appeared to my staff, was actually meant for Assistant U.S. Attorney Keene and not the Court.

Perhaps there was some mixup and an intern was told to get this to court or something and actually brought it to the Court rather than Ms. Keene. My -- my staff identified it as